After the Army found that Fluor's disregard of key contractual requirements led to the bombing at Bagram, Specialist Hensley tried to seek some measure of justice. But the Fourth Circuit blocked his efforts on a rationale that Fluor doesn't defend. Fluor's alternative theories do not justify preemption here either. First, Fluor argues that the Constitution's structure, either by itself or through its emanations of federal interests, preempts Hensley's claims. That argument has no basis in the Constitution's text, structure, and history. Our Constitution presumes that state tort claims are available and leads it to Congress to alter that default rule. Congress has done so in some circumstances when it comes to federal contractors, but it has not barred claims by American soldiers injured by a contractual negligence. Second, Fluor seeks to radically expand Boyle. Boyle is a basis for reversing and not affirming the judgment. Boyle recognized a limited defense for contractors who do what the government says. Boyle doesn't apply here because the Army itself found that Fluor violated the Army's instructions. Fluor's contrary reading of Boyle contradicts Boyle itself, and it cannot be harmonized with the warning in Rodriguez that judicial lawmaking should play a modest role, or the teaching in Garcia that preemption cannot be based on uncodified interests. I welcome the Court's questions. Did Respondent make the constitutional arguments below? I believe it was included in a small portion of their appellee's brief below, Your Honor. In your case, is there any portion of activity that we're talking about that was done at the direction of the military that's involved here? We don't think so, Your Honor. The reason is supervision and escorting were left entirely to Fluor under the contract. Once the bomber was hired and was on the base, it was up to Fluor under his contractual obligations to supervise him at his work site as well as to escort him. Would you spend just a brief moment discussing why Boyle is not dispositive or why it doesn't control here? Sure. So Boyle is all about a contractor who does what the government says. That is the heart and soul of Boyle. It starts at page 505 by saying the government's interest is in getting its work done. And at step two, it says there was a significant conflict between state tort duty and what the government required that was precisely contrary to what the government required. And at step three, Boyle made it very clear that its defense is for contractors who adhere to the government's specifications. What do you do with the entire text and history of the Constitution which says war making, war fighting in combat zones is a federal interest and the states, Article 1, Section 10, and otherwise have nothing to do with how America conducts its operations in a combat zone? Certainly, Your Honor. So Articles 1 and 2 do not automatically preempt state law when it comes to federal contractors. And we know that from cases like Penn Dairies and North Dakota. In Penn Dairies, this court said there is no clause of the Constitution which purports unaided by congressional enactment to prohibit such regulations and such regulations there was regulations of military contractors. And of course, Justice Kavanaugh... Well, in a war zone, though, in a combat zone, we have a line of cases, Garamendi, Crosby, you know all the cases, put aside Boyle, Boyle footnote four talks about this, but not Boyle, the rest of it, that says that there are certain areas where there's a uniquely federal interest. And in those areas, the usual preemption rules don't apply, that we expect Congress actually to speak clearly if they want to provide for something like state tort suits. And that's so that's flipped. And it would think if you're talking about uniquely federal interests, there's nothing that's more uniquely federal than successfully fighting a war in a combat zone. Certainly, Your Honor, we agree that Texas can't declare war in Mexico or New York can't invade Canada. But can Texas regulate how the military structures its operations at Bagram? Or can South Carolina regulate it? And you know, that raises another question here, which is pointed out by Judge Silberman in his opinion on this, which you're familiar with, which is, can 50 different jurisdictions regulate what's going on at Bagram? Certainly, I'll address in turn. So as to the constitutional structural point, we know the default is common law claims are  And it goes all the way back to cases like Little v. Barryme, where Chief Justice Marshall, he upheld damages award against the Navy captain who was following the President's order. And also in cases like Mitchell v. Harmony, there was a common law claim against an army colonel who seized an American citizen's property during the Mexican-American war in that case. So we do know this is certainly an area where Congress can certainly act and Congress has done so. Well, I agree with that. So I don't want this to sound like I disagree that Congress can certainly act. The question is, what's the baseline? So the baseline, I thought under our case law going back way back, if it's a uniquely federal interest, we have lots of cases saying something along those lines that we require the Congress Act to allow such suits. And we've said in Crosby, for example, a failure to provide for preemption expressly may reflect nothing more than the settled character of implied preemption doctrine that courts will dependably apply. And so Congress looking at this area, the idea that state tort law is going to regulate goes on in Bagram, I think Congress sounds way out there and not something that they need to get involved in because of the doctrine, as Crosby says, that is dependably applied. Sure. So two responses, Your Honor. The first is the fact that military contractors might face some liability for acts occurring overseas U.S. bases was not lost on Congress. So Congress in 1941 passed a law called Defense Base Act. And what Congress did there was to exclude or preclude liability for government contractors occurring on U.S. bases as to their civilian employees that are under their supervision. So what that says is the fact that Congress, of course, operating against the background law like Little and Mitchell knew that common law had a reach, even on foreign soil. And Congress certainly could have acted to take that back as to when it comes to American soldier who was injured by a contractor. Counsel, isn't the simple answer to Judge Kavanaugh is the 50 states can't tell the military what to do, correct? Certainly. Absolutely correct, Your Honor. They don't have... We've already said that in Boyle. Correct. Correct. And we've... That we made it clear. If the military orders them to do something, they have to do it. Correct. There are no... There are no contractors, though. Well, the military contractor. So what Justice Kavanaugh is talking about is almost a field preemption concept. That absent the conflict, an entire field is preempted. And what you're saying, I think, by using Little and Mitchell, is that entire field in our history has not been considered preempted, correct? That is correct, Your Honor. All right. So now let's go down to something more, I think. The interest that's being protected is military interest, correct? Yes. All right. It's the federal government's military interest. Correct. You only get liability if the state law conflicts with military orders in some way. Correct. And so if there's no conflict, there's no interest to protect, correct? There's nothing here because Floor violated what the military wanted it to do. That's the question that Justice Thomas asked you, which is, there has been no directive by the state that the contractor had to do X, Y, and Z. It was a directive of the military, correct? Correct, Your Honor. I mean, so we think that the state law duty also applies here, the duty of responsibility. That's because the government didn't direct unreasonable conduct. Correct. If the government directed unreasonable conduct, there'd be no liability, correct? Correct. The government did not direct Floor to disregard supervision duties. Mr. Chang. I'm sorry. We'd be creating a new area of preemption law if we say that there is field preemption. Especially through federal interest. When there is no conflict whatsoever. Footnote 11 of Garamendi says, if a state were simply to take a position on a matter of foreign policy with no serious claim to be addressing a traditional state responsibility, field preemption might be the appropriate doctrine. I mean, there's been a lot of discussion in the case law about how you distinguish field and conflict, but field preemption in an area of uniquely federal interest, you can call it conflict, you can call it field, but the word field has been in our case law at times on this kind of thing. I'll stop there, but I just wanted to get that comment out. And I guess I want to ask, following up, about the field, it seems to me you don't necessarily lose even under the enclave theory, because I understand the field preemption argument to be kind of a clear-filled trust, Kimball Foods, this is an enclave of uniquely federal interest. But even if that's so, all that means, and Boyle kind of finesses this question, but all that means is that the federal court would adopt a common law rule. It doesn't necessarily mean that the state rule would be, that there would be no liability, I guess is what I'm saying. So if that were the case, we would still have to decide what the rule would be, and we could decide to let state law apply as a matter of federal common law, right? And if we look at the Federal Tort Claims Act, and you see that the combat activities exception doesn't extend to independent contractors, you might say, well, it makes sense to allow liability to remain, even if we're doing it as a matter of federal common law, right? That is certainly correct, Your Honor. So there is a line of cases that say, as a matter of federal common law rule, we're going to adopt the state law rule here. But I think the simplest way here is to just read Boyle as it is, and it's about a contractor who does what the government does. No, no, no. I understand that. I guess what I'm saying is I think you could win, even if we're looking at it as a matter of, listen, the Constitution carved out war powers, and that sort of thing is an enclave of uniquely federal interests, which it does, right? If you took that line of analysis, I don't think you necessarily lose, even under that line of analysis. We wouldn't, Your Honor. If you understand Boyle, then... I'm sorry. Can I just finish up? Yeah, sure. Do you understand Boyle, then, to create a very narrow kind of preemption that's not constitutional, that really is just about the conflict of contract terms? Yes. That's how we understand it, and that's what the opinion in Boyle said as well, because Boyle carves out two hypotheticals where you're dealing with the government contract.  Correct. And a stock helicopter example as well. So that clearly shows that contractors, or justicially envisioned, a system where contractors are still subject to state law liability. Well, Mr. Chang, you're backtracking a lot from the position that I took when I read, that I took from your brief. Basically, the thrust of your brief is, Boyle is inconsistent with textualism. The whole idea of uniquely federal interest preemption is wrong. Boyle's... I'm quoting you. Boyle's uniquely federal interest preemption is difficult to reconcile with the supremacy clause in this court's preemption cases. Brooding federal interest in judicial policy inquiries cannot support preemption, yet Boyle invites precisely those types of inquiries. So you can't quite bring yourself to say, Boyle's inconsistent with textualism and it should be overruled. But what I got from your brief was, you want us to limit it as much as possible. Did I read too much into your brief? No. So, our position is that this court does not have to overrule Boyle, because we live under Boyle's terms. And certainly, the only reason that... Was Boyle correctly decided? Suppose it was before us today, what would you say? I would follow what you wrote in Garcia, Your Honor, that the supremacy clause is limited to the Constitution and federal statutes and treaties. Well, I don't think that's quite what I wrote back then. Even if you didn't... That's something else. I mean, what I took from your brief is, you're saying, Boyle's inconsistent with textualism. Who wrote Boyle? Justice Scalia wrote it. I mean, so you're saying the founding father of textualism doesn't understand textualism. No, that's not what I'm saying at all, Your Honor. Well, that's what I thought. Are there situations in which the supremacy clause itself has a preemptive effect? This court has understood it so, as this court said in United States v. Washington, there are circumstances where the state law directly regulates the federal government or it discriminates against the federal government or its contractors. So why wouldn't that apply when what is at issue are actions taken by a military contractor basically on the battlefield, and you want state courts and state juries to decide whether what the military contractor did is justified? No, Your Honor, first, we're dealing with something that occurred on the civilian part of the base. It's a military base in a war zone, and the very fact that there was this terrorist attack there shows the connection with the conduct of the war, doesn't it? So we're dealing with something that the Army left entirely to floor to do, and this is a natural consequence of the fact that Congress knew about the contractor liability but has not limited service members to be able to sue contractors when they're injured. Suppose a contractor says that the contractor is to provide appropriate protection when it is accompanying a convoy through a dangerous area. Would it claim, and let's say that a member of the military is injured? Could that member of the military sue the contractor on the theory that the contractor was negligent? It depends on what the Army's understanding was, and Boyle contemplates this too, Your Honor. So Boyle says you look first at whether there was a reasonably precise specification, and the step two is whether or not the contractor adhered to that standard. What if it's just provide appropriate protection? I think Boyle contemplates litigation over that issue. Sirius? You know, I was thinking of a similar question to Justice Alito, that you could have the rule that you're suggesting here, and it's the rule that I do think follows from Boyle, which is that the contractor is liable as long as the military didn't specifically approve or direct the conduct, but you could have a more deferential rule, which still allows some forms of state liability to come in, which is that the contractor is liable if but only if the plaintiff can show that the contractor violated military policy. In other words, so in this set of circumstances of the kind that Justice Alito was given, where the government doesn't really say one way or the other, maybe doesn't say anything at all, or maybe leaves it to the contractor to decide, their liability would not be all right. Instead, liability could come into effect only if you could show that the contractor violated military policy. What would you think of a rule like that? We would certainly be okay with that rule. Certainly if the court is already thinking about creating some sort of a federal common law rule in this area, we think it should be the one that furthers the government's interest by avoiding contractor negligence, and incentivizes contractor adherence in a war zone. This ended up injuring multiple U.S. soldiers on the base because Floor didn't do what the Army told it to do. So if we're thinking about what kind of rule applies, the rule has to be one that saves soldiers. Mr. Chang, as a matter of conflict of laws, why does South Carolina law even apply? I understand we don't have to decide that question to decide this case, but it does seem perplexing. Certainly. So part of it is, it's largely a choice of Floor's. Floor was the one who put a principal place of business in South Carolina. It should be not surprising at all, sometimes when you apply choice of law principles, that the forum state's law might apply to you. And here, Floor hasn't disputed our assertion that South Carolina law could hold. Is it possible that Afghan law could apply based on choice of law principles? You know, it's certainly possible, Your Honor. So it's possible that a suit against a military contractor in a war zone could be based on the enemy's law. Which seems bizarre. If this happened on an American base, I wouldn't understand a base to be Afghan soil. I would understand it to be U.S. soil. So is that seriously? Certainly. I mean, there are some courts that have, lower courts that have applied Afghan law in situations like this. However, there are certainly other things that factor in as well, like, you know, whether there is an agreement with the petroleum company. Doesn't that seem like a pretty big problem for your theory, if that's the state law, or if the default is whatever law would otherwise apply? Is Justice Kavanaugh saying the enemy's law is going to apply? I mean, that suggests that maybe a federal common law should apply. Maybe not the common law rule that Floor and the government won. But if the alternative is the default of Afghan law? So two responses to that, Your Honor. The first is that, so when it comes to applying foreign law to judge the acts of a military contractor, again, that's an ordinary working of the fact that Congress has not displayed state law, which includes the operation of choice of law principles under that state law. And the second is that, you know, this is obviously not an issue in this case, because we're solely talking about preemption here, and Floor hasn't raised any choice of law issues. But there might be other doctrines that preclude the application of foreign law in situations like this. Can I circle back to something Justice Alito asked? He asked you if you thought there was constitutional preemption as a principle. And you said yes, I believe, but correct me if I'm wrong. And I wanted to know, is uniquely federal interest a branch of constitutional preemption in your view? We believe it's a branch of federal common law preemption, Your Honor. What's the difference, then, between what you're calling constitutional preemption and federal common law preemption as to the concept of uniquely federal interest? Or is there any difference at all? So what I was talking to Justice Alito about was cases like U.S. v. Washington and Penn Dairies and North Dakota. Can you just answer my question? Is there any difference? There is a difference, Your Honor. What is the difference? The difference is one comes from the structure of the Constitution and this Court's decisions. Difference in application. Is there any difference in application? I'm sorry. I mean, yes, Your Honor, because one is saying that states cannot act in a discriminatory manner against a contractor. And the other is that you're displacing the operation of the entire state law from that area. Unless Congress specifies otherwise. Always important to put that on there. Congress could provide for state tort law in this area. That's my point, which is this whole case, in my view, starts with what's your baseline? State tort law regulating military contractors in a war zone. Is your baseline that Congress has to speak to displace that or that Congress has to speak to provide for that? And I would think our uniquely federal interest branch of preemption law makes, I thought, fairly clear that Congress would have to speak to provide for that. And look, what happened here is terrible. So I'm completely sympathetic to that. But in terms of a legal framework that applies for situations like this, my thought, based on the precedent, was Congress has to speak to provide for it. We don't think so, Your Honor. Given cases like Little and Mitchell, we think the default is that common law rule is in place unless Congress affirmatively displaces the operation of the state law. And is it your view that Boyle comes out differently under Justice Kavanaugh's theory? I guess I'm trying to understand that if we sweep as broadly as this is a war zone and there's a uniquely federal interest, I thought that was also the case, not maybe the war zone part, but the uniquely federal interest part in Boyle. So doesn't it come out differently? Your Honor, there is certainly a tension. Or at least, we don't need all the analysis that Boyle has to get to preemption, I guess. If we could just say it, step one, uniquely federal interest, and that's the end of it. Right? That is not even the analysis in Boyle. Boyle, uniquely federal interest, was a starting point in Boyle. Correct. So there was more to it. And there was a reason, because the understanding was that there still might be an opportunity or a circumstance in which you would have liability, even though we're talking about a federal government contractor dealing with the procurement of military equipment in a way that is obviously implicating federal interest. That's certainly right, Your Honor. So can you just say a little bit about the Bedelia test? As I read your brief, in the last few pages, you seemed to say that if the court applies the kind of Boyle analysis here, it's the Bedelia test that you would suggest. Why is that? So we think that the Bedelia test is more faithful to what this court's teaching in Boyle. Again, Boyle zeroed in on the federal government's interest in getting its work done and making sure that there wasn't a conflict between that decision and the state law duty. So Bedelia looks close to that, if we get to that. Because Bedelia actually looks at what the military has authorized and directed. So it is a test that closely tracks the military's decision and Boyle. If preemption depends on the interpretation of a contract and whether the contractor violated the terms of the contract, do you want us to adopt something like the rule that used to apply in foreign sovereign immunities cases so that if the government says there was no violation of the contract, that's the end of the matter? Would you say no? The plaintiff still has the opportunity to litigate that issue in state court, presumably, possibly in front of a jury? We don't have a strong position on that, Your Honor. Certainly, if the court says what the military says is preclusive, that's good for us because the military favored us. No, well, not that it would be preclusive against Floor. Would it be preclusive against you on the issue of preemption? Like I said, we don't have a position one way or another on that. How can you not have a position on that? That seems to me quite critical to what's at stake here. Certainly, Boyle, at step one, leaves that possibility open in this area. It anticipates litigation over what the specification meant and whether there was a compliance with that specification. It would be a really hard case for any plaintiff to disagree with an army coming in, and even if a judge disagrees with that, that would give the contractor a great reason on appeal, and that is not a reason to displace state law. Thank you, counsel. I'm sorry. Mr. Thomas? As I understand your argument, you're not saying that the government is precluded from preempting the lawsuit, your lawsuit? Correct, Your Honor. Would you walk me through the argument for the Federal Tort Claim Act, a Federal Tort Claim Act exception operating as a preemption statute? So, obviously, we don't believe that it does, Your Honor, and that argument has sort of fallen to the wayside during the merits briefing here because FLOR is now relying on a completely different source of federal interest in this case. As I understood it, it was that, as the Fourth Circuit said, the combatant activities exception has a policy of protecting the military's judgment, and that meant that even the imposition, per se, of state law was a problematic imposition. Justice Alito? Justice Sotomayor? No. Justice Kagan? Justice Gorsuch? Justices, states wanted to do this not by tort law, but wanted to do it by regulatory law. They could do that, I assume, as well, correct? But it would be limited. Its ability to do that would be severely limited. Tell me what the limits are. The limits are the non-discrimination principle that we discussed, and also, we certainly do not argue that there is... A general state regulation of workplace safety. That would be non-discriminatory, right? That would be non-discriminatory, but again, that might conflict... Or of employee rights. That would be non-discriminatory, right? It's not clear if that would include a soldier overseas, and also... To a contractor. To a contractor? A military contractor overseas. The state wants to apply its employee rules, its workplace safety rules, on a non-discriminatory basis, yes or no? No, because the DBA already precludes things like that. What kinds of regulatory... But you said some could be applied, right? If it was like a safety regulation, like here, that could certainly be it. What do you say to the retired military brief that says that this is going to... Your rule would lead to finger-pointing, which I think this suit would lead to finger-pointing by the defendant against the military, and back and forth on that. You know, how does someone who used to be in the Taliban end up running a 5K or whatever it was at the starting line? That's going to be a lot of finger-pointing on that. And the retired military officers say a military theater's legal uncertainty and finger-pointing are an invitation to ruin. And I'm just curious your response to that. So this is a situation where the military already found that it was not responsible, it was Ford's responsibility? Well, the military found that, right? Certainly. So there might be finger-pointing, but... Certainly Ford's not going to agree with that, right? At the end of the day, it's just a possibility of things that might unfold during discovery or evidentiary issues. Would you imagine in state court, like generals, military officers coming in for testimony about what our rules were for the people who worked in the vehicle yard, what our rules were for who could run in the 5K, why we had former Taliban working on a U.S. base at Bagram? That would be an interesting discussion, I'm sure. Do you envision that kind of testimony happening in the state court? No, not at all. Because here the Fourth Circuit already agreed with us that litigation here would not lead to assigning fault to the military. We can assume military made decisions that it made and we can judge Ford's actions under those military decisions as a given. We can take that as a given. Have any federal courts gone your way on this general issue so far? The Padilla Court has agreed with us and that's why there was a circuit split in this case. Okay, thank you. Justice Barrett? To follow up quickly on Justice Kavanaugh's question about the finger-pointing and the kinds of questions that the United States would be asked, it's my understanding in the United States' brief that it said that it could assert the state secret's privilege and reserve the right to do so, although it had not yet in this case, right? That's correct. So if there was confidential information, there would be, you would agree, some sort of protection? 100%. And the reason why, and the fact that there are other mechanisms to protect the government's interests like that undercuts the need to display state law with federal common law in this case. Justice Jackson? And is it your view that really the rule that you want us to adopt or the one that you're focused on is applicable in the situation in which the contractor acts contrary to the military interests because it's doing something negligently that is not, it has not been authorized by the military to behave in this way, the particular way that is being claimed as causing the injury in this case? That's correct. I mean, if we're creating a federal rule to further the government's interests, the violations have to be factored in too. How do we think about the fact that apparently DOD and its regulations left open the opportunity or said to contractors that you could be held liable? So it's the government's understanding that there's some operation of common law potentially against contractors in this universe, right? That's huge, Your Honor. I mean, the fact that DOD has been telling contractors that they could be liable and that the public policy rationale of FOIL will not protect you if the government's decisions are not at issue, that's huge. And we also have the fact that Congress has not acted to display state law here. And with respect to the FTCA and the combat and activities in your exchange with Justice Thomas, I guess I'm also curious about the point that I think Justice Barrett made earlier, which is that the combat and activities exception doesn't apply to contractors, correct? Not at all. So Congress did not envision a world necessarily in which contractors would not be held liable for these kinds of things? Not at all. And Congress doubled down in the Westfall Act when it passed Westfall Act to protect federal officials from lawsuits. It adopted the definition of the FTCA, which is the same, excluding contractors. And finally, let's say if we think BDEA is the correct test, should we vacate and remand for further proceedings under that test? That was not what was applied here, correct? No, but you should not... There's no need to, Your Honor, because we made arguments about why our position is correct under the BDEA test. It has not been disputed that FLOR could somehow meet that test here. And that is not the case because they violated whatever the military authorized and directed in this case. Thank you. Thank you, Counsel. Mr. Moser. Mr. Chief Justice, and may it please the Court, this case arises out of an enemy attack on U.S. military forces on a foreign battlefield in time of war. Petitioners sued FLOR under South Carolina tort law for failing to prevent that act of war. Those state law claims are preempted because they conflict with uniquely federal interests. Petitioners' claims interfere with the federal government's exclusive war-making powers. The Constitution vests all war powers in the federal government and expressly withdraws from the states the power to engage in war. Applying tort law on a foreign battlefield would hinder the federal government's exercise of those powers. The purpose of tort law is to discourage risk-taking, but waging war often requires contractors to take risks, putting their lives and the lives of others in danger. Petitioners' claims also weaken the military's control over combat operations. Contractors are part of the total force and the military cannot successfully wage war without them. Success on the battlefield requires trust and cooperation between soldiers and contractors. Permitting soldiers to sue contractors for combat-related injuries would destroy that trust and discourage that cooperation. Petitioners' claims undermine the military's authority to punish and deter misconduct. Congress has given the military the necessary tools to enforce its contracts and to ensure compliance with its orders. The military must decide how to address noncompliance by balancing sensitive national security and foreign policy interests. Allowing state law to impose additional sanctions on contractors would upset the balance struck by the federal government. The government has determined that petitioners' claims would inflict grave harms on its ability to wage war. Rather than second-guessing the military's judgment, the court should affirm. I welcome the court's questions. Are all contractors immune from suit on a military basis? No, we would agree with the test that the government has proposed here and to establish preemption here you would have to show that the injuries and the claims arose out of combatant activities and that the contractor was acting within the scope of its contract. What about for example the food service contractor on the same base and assumed there was food poisoning? Yes, we would say that would be preempted and Bagram, the conditions on the ground there, it was under constant attack by the Taliban and rocket attacks on a daily basis. We think there was very little that was going on at Bagram, if anything, that was not closely connected to combatant activities. So are contractors under those circumstances subject to military laws or say court-martialed? Yes, absolutely. First of all the military can terminate a contract, they can seek damages under the contract. Contractors and their employees are subject to criminal prosecutions and court-martials and Congress has over the years changed the provisions and given additional tools to the military to police its contractors and ensure that they comply with their contractual obligations. Mr. Mosher, your position extends to a case in which the contractor does something that's an explicit violation of government policy. So just assume, which I know you can test, but just assume for a moment that a provision in the floor contract made it quite clear the floor was not to operate in the way the floor in fact did. What is the uniquely federal interest there? So the uniquely federal interest, we would still define it as the federal government's exclusive authority in determining how to wage war. Where we would see the conflict, even within the situation in which there has been a finding of breach, is when state law is trying to impose additional or different sanctions than the military. So here they point to the finding and the determination where the Army has said that there was a violation of contract, but the Army determined that what was in the military's best interest was not to terminate the contract, but to continue to work with floor going forward. That conflict looks a lot like the conflict that the court found sufficient to find preemption in Arizona versus the United States, where there was a different method of enforcement in Buckman, where the state was trying to impose additional liability for fraud to the FDA, and even in Garamendi. And what the court said in Garamendi is that if the federal government decides as a matter of foreign policy to use kid gloves in addressing an issue of foreign policy, and a state wants to address the same issue, but they want to do it through an iron fist, that is a conflict that warrants preemption, because it's left to the executive branch to calibrate the appropriate remedy. And we think the same analysis applies here. It is, you know, the military could have terminated the contract. If that's the case, what you're saying is the military should decide this. What do you do with the regulations, which, as was discussed earlier, would seem to permit liability in just these circumstances? You see, not in these circumstances. The regulation recognized and told contractors there could be liability in certain circumstances, and we recognize that. Under the test as I was talking about, it says unless you're exercising specific control over the actions and decisions, you're not going to get Boyle. That's what the government told contractors like Floor. Why isn't it fair to hold you to that? So, we're not asking for Boyle the preemption under the rule in Boyle which applied the discretionary function exception. And what was different about Boyle, although it did involve a military contractor, obviously away from the battlefield in time of war. It adopted a rule not based on the war powers because that rule applied to all government contractors. But what the government has been consistent in saying for over a decade... So, you're asking for something different than Boyle because that was a contract case and DOD told folks under Boyle you're going to lose in circumstances like this, or you might lose in circumstances like this. So, you're asking us to invent a new supplement to Boyle. It's a different rule that is based on the different uniquely federal interest. The uniquely federal interest that the court fashioned the test on in Boyle was a uniquely federal interest. Let me just finish. Thank you. You're going to have your shot, my friend. Boyle was about contracts and it was about if it's specifically directed well, then you're out of luck. I totally get that contractors in wartime play an increasingly significant role. I mean, we've got briefs before us from the veterans of foreign wars pointing out that in the Gulf War in the 90s, it was like 1 in 100, I'm making that up and now it's over 50% more recently. That certainly raises some significant policy issues. One might think that it would help the military to immunize all contractors and there's some good arguments for that. But there's another good argument on the other side, which is, well, maybe the military benefit most from having efficient contractors who are less likely to cause harm to military members. And we've got competing amici making both sides of those. Why isn't that a judgment? It really cries out for a congressional decision. And what expertise do we have in setting that rule? So, on that point, I would say this court doesn't have expertise in a number of cases determining what would best serve the military's interests on the battlefield. But this gets back I think to Justice Kavanaugh. So why not just apply Boyle and be done with it? Because what we have at issue here is the uniquely federal interest of the federal government's exclusive power to wage war. That was not what the court addressed in Boyle. And I think to answer that question, we have to decide how important is it for the military to have contractors not fearful of liability versus how important is it for the military of contractors who don't injure military members? That is what you're asking us to weigh. And you're asking us to come down on one side rather than the other. And I'm just suggesting these are really good arguments on both sides of those, which would advance the war-making function of the federal government. And I don't know. The military is well-positioned to make that determination and when to hold a contractor accountable for an alleged breach and whether they think that is a situation that will lead to better performance by the contractor. So it's left, under our view, it's left to the military to make that determination and balance those competing interests. And the military does that. But counsel, so I guess one problem I'm having is just the analytical one. I mean, let's assume that we think you're right and that there's preemption. You still have to decide if you're saying that state law can't control, then some federal common law does. And Boyle, the conflict, you're right, it was different. But there was actually, they were contractual terms. And so the court was very focused on the specific conflict between the contract that the helicopter design fulfilled and the state tort law. Here, if we say that because of the uniquely federal interest in waging war, state law can't operate, I take it what you're asking us to do is say, and then as the federal common law rule you should adopt, you should go look at the combatant activities exception in the Federal Tort Claims Act and extend it to contractors. So it seems like a very fancy way of just saying you should look at the Federal Tort Claims Act and extend it beyond its text to cover contractors. So that is part of the argument that the combatant activities exception can be used as evidence of Congress's intent on the types of claims that would interfere with the military, just like the court used it in Boyle. It was the other, the discretionary functions exception, but it was the same way that it used it. I think more fundamentally where we see the conflict and why between applying tort law or even a tort law claim as a matter of federal common law to combat operations on a foreign battlefield is we just think there's inherently a conflict between what the military needs of its soldiers and contractors of how they wage war and a duty to impose reasonable care for the protection of others. It's two-step. One is that state law can't operate and then second, please adopt as a matter of federal common law an immunity for independent contractors. We would consider it preemption. That would be the step if you went through Boyle. It seems to me you're saying state law can't operate because this is a federal enclave that has to be governed exclusively by federal law because of the federal interest in the war-making power that states don't have. But then you still have to decide what rule operates and you're saying and the rule that should operate is one of immunity for contractors. What the rule that would operate is that the court would leave this area of common law to Congress's control. Congress has legislated in this area. Congress can adopt rules and create causes of action but in the absence of congressional action, yes, we would say a state law claim or a tort claim. Why aren't you... I'm sorry, could you finish that? In the absence of congressional action, what... A tort law claim would not be allowed to proceed. Counsel, that's sort of turning things on its head. Preemption on its head. It's like Congress has to act to overturn our presumption. But why did we have Boyle at all? You say this is based on some exclusive Article I power. The power to raise and support an army includes training an army. It's exclusive to the federal government. States can have militias but not army. So why did we bother with Boyle at all? You're sort of saying, you're going a step further and saying that the war power is somehow more important than the power to support and raise an army, correct? Certainly when you're talking about combat operations on a foreign battlefield, that's different, and I think maybe why... Then why did the military issue its regulation? Their military contractor asked for indemnification, and the military said no, because under Boyle if you're making a judgment contrary to our directives, you're liable. We don't see why you should be indemnified. And that was in the middle of the Iraq and Afghanistan war. It was a wartime regulation that they were considering under a Republican president, 2008, under President Bush, and they're saying no. In a time of war, we're telling you you're responsible. You said earlier that we should leave this to military judgment. So why shouldn't we leave this something... a field preemption that's contrary to two Supreme Court precedents, Little and Mitchell, that never thought there was a wartime exemption for anyone, 1801, 1857, certainly closer to the revolution than now, to our founding. Where are we going? Why aren't we leaving this to the parties who should decide this? Congress and the military. The military could write its contracts more specifically to indemnify or direct. I mean, you'll hear from the government shortly, but I'll point out the government has consistently maintained the position it does now since at least 2012, that claims asserted against a contractor for combat operations on a foreign battlefield are preempted. They are not covered by the discussion in the 2008 regulation. That's their position. I mean, the broader point that you raised, and I think this goes back to Justice Kavanaugh's talk about what should be the default rule and why couldn't Congress, if they want to provide relief for contractors here, speak clearly. That's an argument that is made and could be made in almost every case for implied preemption. Chief Justice Marshall acknowledged and rejected that argument in Osborne. Justice Kavanaugh quoted the language from Crosby that says, you know, that Congress, the fact that they didn't expressly preempt something, just maybe show that they understand implied preemption. I think the default rule... After Boyle, why would they understand that? So, after Boyle, they would have understood that the way the court interpreted and provide preemption to a contractor based on a FTA, FTCA exemption, they reasonably could have understood that courts could hold, as all of them have, that there is preemption for combatant activities. Yeah, but all of the exemptions that have been created by the circuits all involve, to some extent, military directions that are... that have specified in some form the directive the contractor followed. I would disagree with that. I think the majority of the courts don't go that way. No, the court circuit is broader. Thank you. Justice Gorsuch has good questions earlier about Boyle and the interaction of Boyle with other branches of preemption. I think this is very important analytically that we have this straight, so I want to make sure we have it straight. Which is, I think you're saying, put aside Boyle. We're not inventing another branch of preemption law. We are applying the long-standing uniquely federal interest branch, which naturally would encompass, at its core, war making in combat in a foreign country in a war zone. Right? So that's not a new branch. That's not new. But it also means you don't need Boyle. Like Judge Silverman said, even in the absence of Boyle, there's preemption in this kind of circumstance, and that's your point. Put aside Boyle. It's gone. You still win under this other branch of preemption law, is your argument. Yes. Our argument, at its highest level, is that the claims are preempted because they conflict with the Constitution. The Constitution not only vests the war powers in the federal government, but importantly, Article I, Section 10, Clause 3, expressly withdraws the power from the states engaged in war. And these state tort claims, by imposing common law duties of reasonable care onto the battlefield, would interfere with the federal government's exercise of its powers. You can get there through Boyle. That's one line of cases to get there. You can get there through Garamendi, Crosby, Zschernig. Those cases recognize simply you can weigh the way that a state law or state law clause of action would interfere with the federal government's exercise of its powers. And if that's enough of a conflict, there can be preemption. As Your Honor pointed out, footnote 11 of Garamendi said, if we're dealing with an interest where the states don't have a historical role in regulating, maybe we should treat this more as field preemption. That's the circumstance we're dealing with here. Two quick follow-ups. Congress could provide for state law, tort law, to apply. So when we say the Constitution preempts, that gives it to Congress and the executive, but they could enact laws allowing this, correct? Correct. And then secondly, on Justice Barrett's question about what would the federal rule then be, I think your answer is, well, that's defined by the scope of preemption, and the scope of preemption you think is, if we're talking about a war zone, combat activities in a war zone, that is at the core of a uniquely federal interest. Correct. The scope of the rule, the common law rule the court would adopt, just like it did in Boyle, is a rule for determining where there would be preemption and what areas would be left to federal common law and what would fall outside of there when state law claims would be allowed to proceed. So you say that Congress could allow for liability in that exchange with Justice Kavanaugh, and I guess I'm just trying to understand how we fit that concept into the understanding that in the FTCA, Congress decided that even with respect to combatant activities for which the government itself could not be held liable, there would still be general contractor liability. I don't, I guess I'm struggling with thinking about what Congress may have intended with respect to contractors and their liabilities concerning combatant activity when we do have a pretty substantial and significant carve-out in the context of the FTCA for those same kinds of activities. So the FTCA itself carved out contractors because that was a decision by Congress that the United States would defend and claims and accept liability for actions by its employees but not for its contractors. But the reason we think the combatant activities exception is relevant is for the same reason that the court looked to it in Boyle, as just evidence of the types of claims that Congress would think poses the greatest interference with the exercise of the federal powers. But as I was saying to Justice Kavanaugh in relying on cases like Garamendi and Crosby, you don't need to rely on the FTCA or the combatant activities exception. Justice Kavanaugh is exactly right that the majority test, the test applied by the Fourth Circuit, is based both on Boyle and constitutional preemption apart from that. Thank you, Counsel. Justice Thomas?  from the combat situation, how would you define uniquely federal interests? What the court said in Boyle, and we think he's right, is those issues that the Constitution and the laws of the United States commit to the control of the federal government. So here I think... What does that mean? You can look to the Constitution, and I think this should be an easier case for determining a uniquely federal interest. The Constitution vests the war powers in the federal government and expressly states that states may not engage in war. So the reason that war making is uniquely federal is that the states do not have power to engage in war making. And you could argue that the interstate highway system is uniquely federal. I just... I don't understand how we are going to limit... I mean, there are very few areas that the Constitution expressly withdraws the power from the states to regulate. In most areas... Give me a couple of examples. Obviously war, making treaties, coining money, the things in Article 1, Section 10, provide a list of the things the states cannot do. Justice Alito? Can... Is Mr. Hensley's claim a tort suit or a contract suit? He brought both claims. The remaining claims are tort claims. For his breach of contract claim, that was dismissed because he's not a third-party beneficiary to the contract. And so that obviously, you know, is one of the oddities of the rule he proposes, is that he's going to litigate a breach of contract without a contract claim. So is it... Would it be odd to have a rule in which the scope of preemption for a tort suit depends upon whether or not there was a breach of a contract, as to which he was not a third-party beneficiary? Yes, yes. That would be very strange in my view. Suppose that a contractor is building a building and hires a subcontractor and specifies exactly what the subcontractor is to do, and then someone is injured by falling debris, and that person sues the subcontractor. Would it be a complete defense for the subcontractor to say, hey, we weren't negligent, we were doing exactly what the contractor told us to do? Would that be a complete defense? Not under general tort law. Can the federal government, by regulation, provide a conclusive interpretation of the scope of preemption? No, I... They haven't attempted to, but I think they probably would not be able to. That would be left... When the FTCA provision that's been discussed was adopted, is there anything to indicate that Congress had activities on the battlefield in mind? There's no... There's really no legislative history about that. The fact that it was adopted shortly after World War II to address combatant activities in time of war would suggest that they had that in mind. And it's been suggested that the federal government has no interest when it is... When what the military contractor does is a violation of the contract. Is that simplistic? There can be several different situations. One, there could be a situation where it is absolutely undisputed that there was a material breach of the contract. There could be a situation where the military says there was a breach of the contract. And when something goes wrong, like the bombing on the Wagram base, the military has an interest in trying to exonerate itself. So you could have the situation where the military says there was a breach, the contractor says there wasn't a breach. There could be the situation where the military says there was no breach, the contractor says there was not a breach. So wouldn't the rule that we adopt have to apply to all three of those situations? I think it would. And I think what's critical here is we are clearly in the situation where there is a disagreement between FLOR and the government about whether there was a breach. The government ultimately made a determination that the best way to continue waging war was to allow the parties to agree to disagree and to move forward and continue to fight the war. But if the decisions of a contractor are going to be made, the military is going to have to act very differently when an accident happens. The immediate thing that the military needs when there's an accident like this is for soldiers and contractors to work together to make sure there's not a similar attack later that day, the next day. And so you need cooperation. If the contractor knows we could be blamed for this, they're going to want to do their own investigation. They're going to want to collect their own evidence. They will already start to be considerations of was it the military's fault? Was it our fault? I think one thing if I can address a statement before, the district court made clear, this case went forward, FLOR would be able to try the empty chair and say this was entirely the military's fault. You should not hold us liable because the military first made a decision, a foreign policy, that we're going to allow former members of the Taliban onto Bagram because that's a good way to rehabilitate them. The military then decided that Mr. Nayib was a former member of the Taliban, not a current member of the Taliban. FLOR didn't know he had any ties to the Taliban. That was entirely the military's judgment that he was former. Mr. Nayib, the evidence showed smuggled explosives onto the base to build the bomb. It was the military's entire responsibility to prevent that from happening. So there's no way this case could go forward. You know, the plaintiffs say if they try the case... It's the first time I've heard a defense attorney on behalf of his client say, I'm going to take away an empty chair that I could attack. It's a very odd argument. Okay. Can you just continue with that? Yeah, I mean, where I was ending with that is, you know, the plaintiffs said that the military was supposed to prevent   They said that they wouldn't put the military's judgments on trial. You're going to do it. Of course. What are the Taliban doing at Bagram? Right? That's going to be the whole deal. And that's going to be a lot of... I mean, you all are together today, but would not be together in that part of the case. And in the South Carolina case, it was the military's responsibility, right? That's correct. And another thing... The military runs a 5K, right? And anyone who's run a 5K, there are lots of people stacked together at the starting line. And there was a lot... And just go ahead. There's a lot of disagreement about what it meant that floor's duty to supervise. Our position was that it was our duty to supervise to ensure that the employees carried out the work that they were supposed to do, not to provide security, not to provide force protection. That remained the military's responsibility. And they're going to be pointing out to you, and I know you disagree with this, that you all didn't do enough to supervise them at the vehicle yard, et cetera, right? So it's going to be a back and forth on this. That will be a back and forth. And our position would be that the evidence showed that he was a perfectly acceptable employee, was performing up to... When did you learn... Don't tell me that you shouldn't at this point, obviously. When did you learn that he was a member of the Taliban, or a former member of the Taliban? Yeah, certainly after the attack, and I'm not sure it was likely when, you know, the AR-15-6 report came out, or maybe in the course of the investigation. Okay. That's it. Ms. Burt? Just a few clarifying questions. First is, I just want to be sure that I understand, you are asking for a rule that is different from Boyle, because do you agree that if we just applied Boyle, because there is not the one-on-one conflict, you know, the air conditioner hypothetical, you would lose? So this is something that's different from Boyle that you want? It's different, yes, it's different from Boyle. Second, can you just say a little bit what the scope of the combat exception is? I mean, you know, you said that Bagram was under siege constantly from rockets, et cetera. That's certainly not true of every base abroad, but you could still have terrorist attacks. So how is the court supposed to decide when your proposed exception would apply? So, under the tests that we've supported and the government has proposed, for the first element, you would look to the text from the combatant activities exception, and so is it any claims arising out of combatant activities in time of war? And the first decision after the adoption of the FTCA, the Ninth Circuit in Johnson interpreted combatant activities and said it includes not only physical violence, but also actions necessary to and taken in connection with, and every court of appeals has kind of relied on that test which seems consistent with the plain language, and so courts would look to that. Does the activities, are they, you know, supporting arising out of supporting the military's combatant activities? Here, this is at the heartland, right? These are injuries from an enemy attack. But that's surely pretty broad. I mean, Justice Thomas was asking you about, you know, food services and an E. coli outbreak. It means supporting the military's activities. I mean, that is pretty broad, and it seems to me that if you want courts to look at the combatant activities exception from the Federal Tort Claims Act, we're right back to this question of, is what you're really asking for a virtual extension of the text of that exception? So, I would, the hypothetical I got was E. coli on Bagram, and I would say, yes, you may be a different conclusion. E. coli in San Diego, or a base to troops that aren't ready to deploy. It's not, every base is not looked at the same. The actual injury is examined to determine its connection to combat activities, which is not viewed as everything the military does. And so you would have a much more limited scope of protection at U.S. based military bases. You know, that's not to say that there aren't things, because there are things going on at U.S. military bases right now that are connected to combatant activities, but what I was saying in response to the earlier hypothetical is that everything, if not everything, virtually everything going on at Bagram in 2016 because of the way it was under attack. So it could potentially extend to domestic activities if they were supporting the combatant activities abroad? It could.  Go ahead. Well, that's okay. You don't need to say anything more. And just finally, do you see yourself as standing completely united with the government's understanding of the rule, or do you see any differences between your position and the government's? We support the government's position. The way it played out, some of the courts of appeals have adopted a slightly different rule than the government, but there's not a lot of daylight between those rules, and we see benefits in the government's rule. Justice Jackson? Just to clarify, your rule is tantamount to a field preemption kind of concept. I think you accepted that. Is that right? That's what you're seeking, essentially? Certainly, with respect to claims on a foreign battlefield, I think you would view it as field preemption, and that's largely because applying conflict preemptions, we just think there's an inherent conflict between duties of reasonable care under state tort law and what the military demands and needs on a battlefield and combat operations. Thank you. Thank you, Counsel. Mr. Gannon? Thank you, Mr. Chief Justice, and may it please the Court. The Constitution has vested the nation's war powers in the President and Congress and has expressly divested the states of such powers. This Court should hold that petitioners' tort claims are preempted because of the uniquely federal interests at stake in overseas combat operations. Petitioner indisputably cannot sue the U.S. Army directly, and he should not be permitted to sue its combat support contractors instead. Applying that principle requires no extension of Boyle, which correctly looked to a closely related FTCA exception as a model. Under the government's proposed test, petitioner's claims are preempted because they, one, arise out of the military's combatant activities, and two, arise from the contractor's actions within the scope of the contract, whether or not they involved a violation of the contract, because the government is harmed either way. I welcome the Court's questions. Could you define beyond the combat scenario what you mean by uniquely federal interests? Well, I agree with much of the answer that my friend just gave you to that, Justice Thomas, that we start with the Constitution structure here, and we have a list at the top of page 12 of our brief of other areas where the Court has found there to be uniquely federal interests. They include things like foreign affairs, rules implementing federal loan programs, civil immunity of federal officials. They're areas where the Constitution and the statutes and the laws of the United States have made it clear that this is an area of exclusive federal interest, and I think that that's clearest in this context because federal powers are at the receiving end. Let's say I grant you combat. Beyond that, how do we define it? Because this isn't going to... Once we say that this uniquely federal interest carries the day, why wouldn't someone from, say, our military bases in San Diego or in Norfolk, Virginia, whose servicing aircraft carries or nuclear subs, why isn't that unique? Well, I think that there the states would have more interest in what's going on in California than they do at what's going on in Bagram, but we're not asking the court to invent a new type of preemption here. We think that when Boyle talked about uniquely federal interest, that's a concept that this court used in Sabatino to say the act of state doctrine is an area of uniquely federal interest, and the way the court determined that it was was by looking to the Constitution, which it said didn't dictate the content of the act of state doctrine. It looked to statutes that said that they provided indirect support for the act of state doctrine, but it said the very idea that we have, U.S. courts questioning the acts of foreign territories, foreign sovereigns in their territory, is something that is uniquely interested to the federal law. You're making Boyle do a lot of work that I didn't read into Boyle. I think Boyle is standing on a line of case law that talks about uniquely federal interest as being a source of preemption, that this court has continued to repeat that category as being out there as recently as Cassereer and Rodriguez, where the court acknowledged that this is there. And I think this is an easy case for determining that it's uniquely federal interest because of both halves. The federal power is at its zenith because of the way the Constitution has vested war powers in the federal government, and state powers are at their nadir because it has expressly divested states of those types of powers. Counsel, I'm interested in the limitation to the foreign battlefield. Does that mean, for example, there are bases where we're operating from in Afghanistan at the same time that would not be in a foreign battlefield because it's not as directly engaged as Bagram was in this case? Well, the rule that we're asking for would talk about whether there are combatant activities, and we're using the exception in the FTCA as a model, and just as the court did in Boyle, it used a different exception. It was looking at general procurement contracting, and so it was looking at the discretionary function exception, but I think that I would say that most everything that the government was doing, that the U.S. military was doing in Afghanistan in 2016 was likely very closely connected with combat activities, and there's no doubt that respondents' activities at Bagram were supporting the military's combatant activities, and so the E. coli in the lettuce that the troops are eating before they go out on patrols outside the wire in Bagram, that is arising from combatant activities. Well, what if the E. coli infection takes place 700 miles away in a base that is supporting the activities at Bagram? I think that if that's going to be a question about what it means to arise from the military's combatant activities, and we also have the second prong, which is about, and just to finish the answer to the first prong, that can certainly extend to people who are supplying the troops who are on the very front lines. The Johnson decision that my friend referenced from the Ninth Circuit shortly after the FTCA was first enacted recognized that, you know, ferrying ammunition to the troops is something that just helping somebody get ready to wield combat is a combatant's activity, and here the question, by analogy, is also whether the contractor was performing within the scope of its contracts. And if it was... So, ferrying the troops, what about preparing the rations and food that is going to eventually be used at Bagram? And there's some, you know, infection at the food plant in, you know, I don't know, someplace in the United States. Yeah, I think that I'm not sure how the combatant activities exception in the FTCA has been construed in a context like that. I think that for preemption purposes here, this goes to a question that Justice Barrett just asked, whether this really needs to be overseas. I think for overseas, it's over-determined that the federal government's interests are at their height and the state's interests are at their lowest, and therefore it's easiest to say when it's an overseas situation and it's, you know, that the E. coli is happening in Afghanistan, then that's where the claim is arising. It's arising from the military's combatant activities there. So help me, Mr. Gannon, try to figure out what the harm is to the federal government in Bagram. Take the contractor that doesn't properly cook the chicken. Take the contractor that doesn't properly maintain the trucks. Take the contractor that does a whole series of things that are going to injure or kill soldiers in violation of what the government has said is its policies. You know, the government has a policy manual. Here's how to maintain the trucks. Here's how to cook the chicken. And the contractor has operated in violation of that. Why it is that state liability would be so injurious to the government's interests in that context? Which is, I thought, the context that we're concerned about in this very case. That's right. And obviously we want our contractors to obey their contracts. We want them to obey military orders. But that doesn't mean that we aren't threatened by the imposition of the specter of tort regulation in the relationship between the military and its contractors whether or not the contract has been complied with. As has already been mentioned, that's first of all going to lead to disputes about whether it's been complied with that are going to be adjudicated half a world away, maybe with a government in an empty chair. But even when the state thinks it is trying to help the federal government enforce its own standards, this court has recognized that the imposition of state law can be a threat. But tell me why? Because it changes the relationship between the parties. It alters the behavior of the contractors on the ground. They're less willing to do risky things. They may indulge in a mother may I dynamic where they have to keep asking for permission. Hey, you want me to do something pretty dangerous? Can you please confirm for me, sign in triplicate, that you have to do it this way and I want you to be aware that that's really dangerous because I want it on the record for some jury down the road. Wouldn't that answer apply just as well to Boyle? It would apply just as well to Boyle. Part of the difference, though, is that Boyle was talking about general procurement activities for the government writ whole. It happened to arise in the context of a military contract. The court's rule is not limited to military contracts. The hypothetical about the air conditioner is not about contracts. But then what you're saying is that Boyle didn't really know what it was doing. It had a general contracting principle that would have been fine and what it really should have done is to say, but this is the military. It's different. No, I'm saying that because it was forming a general rule that happened to apply to a military context that did not involve combatant activity, it was as undisputed that a helicopter that goes down a mile and a half off the shore of Virginia in a training operation in the 1980s is not combatant activities, even though the helicopter was manufactured during the Vietnam War. You were saying to me about how the government needs to be in control of its relationship with its contractors applies just as well to manufacturers of helicopters. It does, but it's more important in the combatants when the government is engaged in combat in a foreign theater of operations that the type of distrust, the finger pointing, the threat that even though we're supposed to be fighting a war, we're supposed to be worried about how to protect security at Bagram. People are worried about making record for a tort trial that could be happening in one of 50 different states. And so we do think that that's a threat, and the reason why it is different in Boyle, and Boyle requires there to be a violation because it is considering a different exception in the FTCA. Justice Thomas? Justice Alito? In response to the argument that a suit like Mr. Hensley's can easily get into, is very likely to get into discovery that would be very intrusive and disadvantageous to the government, the argument is made, well the government can always invoke the state secrets privilege. How frequently does the government do that? And is it a good idea to adopt a rule that would put the government to the choice about invoking this privilege, which in my understanding is used very infrequently on a regular basis? You're correct that it's used infrequently, and the national security concerns that are of interest, that are served by the state secrets privilege are limited to only certain types of information. We think that the threat of having civil discovery with people on the battlefield is a problem, even if it doesn't involve classified information. It's going to mean that there are going to be depositions of active service members, that we're distracting the military and civilians from their important duties. We are again leading to the finger-pointing situation, the sowing of distrust, the damaging of the relationship between the government and its contractors, and the government still has all of its other remedies. To infer the response to the question from Justice Kagan, that when people don't follow their contracts, we can take certain steps to enforce that, and in this instance, we didn't cancel the contract, but we could have terminated the contract, stopped work, asked for liquidated damages, required personnel to be replaced. We could have done any of those things. We didn't do those things. Adding this extra layer of court incentives creates an over-deterrence that the court recognized as a problem in cases like Buckman and in the foreign affairs cases like... One last question. If we compare the likelihood that a breach of contract by a military contractor will cause either death or serious injury in this country with the risk that a breach will cause death or serious injury at a place like Bagram Air Base, which is greater? I'm sorry, I'm not quite sure I understand the question. What would cause a risk of serious death or injury? Well, isn't there a greater risk of death or serious injury as a result of an alleged breach of contract in a war zone as opposed to an alleged breach of contract outside of a war zone? And therefore, isn't there a greater potential interference with the interests of the federal government with respect to the first? Yes, and this is a point that the D.C. Circuit made in the Sallet opinion where it talked about the idea of tort laws requiring non-risky behavior all the time isn't compatible with a war zone. That doesn't mean that we want contractors to engage in extra risky contract with respect to complying with our contracts, but it does mean that we're worried about the overhang of having this extra liability out there. Thank you. Justice Sotomayor? Just a couple things just to clarify. Uniquely federal interest branch of preemption is a separate doctrine from Boyle, right, or a pre-existing doctrine. Yes, it predates Boyle. The court has continued to recognize it as being appropriate. I think that Boyle applied the doctrine. Right, it's not new. It wasn't new then, and it hasn't been disavowed by the court since then. On the field conflict terminology, I want to get your understanding of what counsel said, which is my understanding is he said when there's an inherent conflict in a particular kind of area, you can call that note 11, and other cases in the court's jurisprudence have essentially said that. Is that your understanding, or do you have a slightly different understanding? In our brief, we said we think you could think of this in either way, but if you had to pick, I think I would say that it's a form of field preemption, and I think that's because we're talking about an area, overseas combatant activities, that is so uniquely federal. The whole area of it should be considered something that is beyond the scope of the states because they've been divested of their combatant activities context, and that's consistent with the way the combatant activities exception in the FTCA itself is phrased. It's just everything is out. No suits are rising out of combatant activities. There's not a bunch of nickel and diming about exactly what's in and what's out. That's different from the discretionary function exception conditions that the court considered in Boyle. We've talked about states, and Justice Kagan's question, states that are trying to supplement or help ensure that contractors comply with their obligations. The rule on the other side, though, I think would apply equally to a state that's hostile to the United States' war effort, which states sometimes have been in terms of opposed to the Iraq war, opposed to the latter stages of the Afghan war. Is there any difference there? How do we think about a hostile state? Hostile might be too strong a word, but a state that has laws that is trying to impose different obligations on the United States' conduct of war than the United States itself is trying to impose. I think that my friend already conceded that that would probably fall because it's a discrimination against the government, and it's treating the government differently. Well, it could be applying a neutrally applicable law, however. Well, I guess there could be a question of if you thought that... You're not concerned about that? I mean, I'm not concerned if you adopt our rule, which would say that combatant activities are their rule. Are you worried about the state that's not supportive? Yes, we are concerned. I mean, as I said, we're worried either way. We think that the imposition of the threat, the specter of tort liability, is affecting the relationship between the government and its contractors in a war zone, and we don't want that interference. What about the Afghan law? So the state choice of law rules lead to Afghan law being applied in a suit like this, and who knows what that would lead to. Do you have a concern about that, or is that not a concern? That is a concern, and I think that I'm not exactly sure what the party's answer to that question really is because there wasn't that much focus. The Fourth Circuit has just a footnote on the assumption that South Carolina law was applicable here, and I understand my friend on the other side to be saying that they're standing on the background idea that common law applies, and I guess they mean state common law instead of, you know, the brooding omnipresence in Afghanistan. Well, some courts have applied Iraqi law or other foreign law in these kinds of situations, correct? I don't know about combatant activities situations, and there may be public policy reasons not to apply foreign law in certain instances. That's really a conflict of laws choice of law question, and as a general matter, this court has held that federal court sitting in diversity has to apply the choice of law rules for the jurisdiction in which it is sitting, and so, you know, we are looking to state courts then in order to select the rule of law. I think that's a reason to say field preemption. Let's not let that dictate what's going to be the standards at issue in this case. Justice Barrett? Justice Jackson? There's been a lot of hypothesizing about what might happen if this kind of tort liability is allowed to take place, but my understanding is that right now, only a few states limit liability, and so the background is that we have the rule operating where these kinds of lawsuits can be brought. Am I wrong about that? Well, I mean, there have been several suits. Several of them have been rejected on the grounds that there hadn't been a violation of the contract. Other grounds. So the preemption rule is not necessarily doing the work. No, they were preempted. In most of the suits, they've been preempted, I think, whether or not it required there to be a violation of the contract or not. I mean, Bedea may be an exception from that. I'm not sure what else has happened in the Bedea case. I'm just trying to understand whether contractors are already subject to tort liability in most states. There have obviously been a lot of suits about this, notwithstanding the 2008 regulatory preamble. The government has been taking the position it's taking here since, in this court, since May 2011, and so I think contractors have had that expectation that the government would be making this argument that there is going to be combatant activities, is going to prevent there being state law litigation about things that are combatant activities. What policy concerns that you have articulated, have they been happening, the finger-pointing and the increased prices and the other problems? I don't know about the... We don't have data on increased prices because I just don't think that we have enough of an effect. These are very large contracts that we've had in Afghanistan and Iraq. There are a handful of companies that successfully competed for them. I'm not exactly sure, when you have contracts this large, what the difference was at the margin. I think the threat would be much greater if this court were to say, if notwithstanding... You make the argument that there are going to be increased prices, and I'm just trying to understand... I think right now I'm not sure what's priced in because I think that there's uncertainty about where this is going to end up, but the government has been taking the contractor's side in these cases for 14 years, more than 14 years now. Thank you. Thank you, Counsel. Rebuttal, Mr. Chang? Thank you, Mr. Chief Justice. A few points. We've been talking about baseline, and cases and statutes tell us what the baseline is. Tort law remains unless Congress acts. Common law claims against Colonel Mitchell was upheld by this court in Mitchell v. Harmony for something that he did in Mexico, and Captain Little was held accountable for something that he did in Hispaniola. Such suits are unthinkable today because Congress has legislated suits like that out of existence with the Westfall Act. And also, in the 40s, Congress passed the Defense Base Act. Congress knew that defense contractors overseas working on U.S. bases might face liability, so in exchange for the employees giving up of their common law claims, Congress instituted a single compensation regime. Also, between the 40s and 60s, nothing was more critical to national defense than nuclear deterrence. Congress precisely legislated to shield federal contractors who helped with the Manhattan Project in the Atomic Testing Liability Act. Congress knows how to do this, hasn't done so here to bar American soldiers' claims. And second point, we are in federal court, not state court, and existing federal protections for the military and litigation already exist. As litigants, we don't have unfettered third-party discovery rights on the government. We have to strictly follow the two-way regulation process, and the government has tight controls over who we can depose, what questions we can ask, and what kind of documents we can seek to begin with. And third, Boyle. Boyle is our case, not theirs. Floor's expansive reading of Boyle and converting provisions of statutes that expressly say it is inapplicable contradicts Boyle and what this court said in Garcia, and we have to look at what this court has said about the supremacy clause, because that is what drives preemption. Here, the laws of the United States do not preempt my client's claims, and the Solicitor General's brief and a brief from my friend Floor are not listed as one of the supreme law of the land. Thank you. Thank you, Counsel. The case is submitted.